[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-12570

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TAVARIS DEON BROWN,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 7:21-cr-00412-LSC-GMB-1

————————————————

Before JORDAN, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Tavaris Deon Brown appeals the 120-month sentence imposed after he pled guilty to possessing ammunition as a felon. On appeal, Brown argues that his sentence was unreasonable. After careful consideration, we affirm.

**I.**

This case arises out of an incident when Brown fired a gun multiple times at a moving vehicle. In April 2021, Tuscaloosa police received a report of gunshots at an apartment complex. When officers arrived on the scene, they found six shell casings in a parking lot. Several witnesses at the scene identified Brown as the shooter.

As part of their investigation, law enforcement obtained surveillance video from the apartment complex. The surveillance video showed a Chevrolet Tahoe arrive at the complex and park in front of one of the apartment buildings. After the Tahoe arrived, Brown exited a nearby apartment building, walked across the parking lot, and tried to speak to two women (later identified as his ex-girlfriend and her mother). The women ignored Brown, entered a sedan parked next to the Tahoe, and drove away; the Tahoe followed. As the Tahoe drove past Brown, he reached into his waistband and pulled out a gun. He shot at the Tahoe several times.

A grand jury returned an indictment charging Brown with being a felon in possession of ammunition, in violation of 18 U.S.C.

§ 922(g)(1). He pled guilty. In the plea agreement, the government agreed to recommend a sentence within the applicable guidelines range, but the plea agreement noted that this recommendation was not binding on the court.

Prior to the sentencing hearing, the probation office prepared a presentence investigation report ("PSR"). The PSR described the facts of the offense. It also discussed Brown's personal history, including that he grew up in housing projects where he was exposed to violence, guns, and drugs at a young age.

The PSR also recounted Brown's criminal history. In 2010, when Brown was 19 years old, he pled guilty to four counts of first-degree robbery in Alabama. These convictions arose out of a single incident when Brown, along with two other men, forced their way into an apartment. During the invasion, Brown "pulled a pistol" on one of the victims. Doc. 15 at 11.[1] He and the two other men stole clothing, money, and cellular phones from the victims. They also "patted down" two female victims, placing "their hands on the victims' breasts, buttocks, and in their crotch areas." *Id.* (internal quotation marks omitted). For each count, Brown received a sentence of "15 years custody, split to serve 3 years" as well as five years of probation. *Id.* at 10. After spending three years in custody, Brown began to serve his term of probation.

About two years into his term of probation, Brown was involved in another incident with a firearm. According to the PSR,

---

[1] "Doc." numbers refer to the district court's docket entries.

Brown intended to cause the death of a victim "by shooting him in the back of the head and/or shooting in his direction several times." *Id*. at 17. Brown was initially charged with attempted murder in Alabama state court but later pled guilty to second-degree assault. He was sentenced to 15 years in custody. In January 2021, after completing approximately five years of the sentence, Brown was released from prison.

About three months after being released from prison, Brown shot at the Tahoe. At the time of the shooting, Brown was still on probation for the robbery offenses.

The PSR also noted that Brown had probation revocation proceedings pending in Alabama state court. A few weeks after Brown shot at the Tahoe, officers received a report of a domestic dispute at the same apartment complex. At the apartment complex, officers found Brown sitting in a chair in the parking lot with his feet propped up on a vehicle that did not belong to him and threatening other residents. The officers arrested Brown and charged him with disorderly conduct. As a result of this incident, Brown also was charged in Alabama state court with violating the terms of his probation. At the time of his sentencing in federal court, the state court had not yet imposed a sentence for Brown's probation violation.

The PSR also calculated Brown's guidelines range. It assigned Brown a base offense level of 20 because he committed the offense of being a felon in possession of ammunition and had a prior felony conviction for a crime of violence (Alabama robbery).

*See* U.S. Sent'g Guidelines Manual § 2K2.1(a)(4)(A) (assigning base offense level of 20 for the unlawful possession of a firearm or ammunition when "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense").

The PSR also applied a four-level enhancement because Brown possessed ammunition in connection with another felony offense. *See id.* § 2K2.1(b)(6)(B). The PSR reported that Brown had committed a felony when he shot into the occupied Tahoe. After applying a reduction for acceptance of responsibility, *see id.* § 3E1.1, the PSR calculated Brown's total offense level as 21.

Based on this total offense level and Brown's criminal history category of V, the PSR calculated his guidelines range as 70 to 87 months' imprisonment. It reported that the applicable statutory maximum was 10 years' imprisonment. *See* 18 U.S.C. § 924(a)(2).

At the sentencing hearing, there were no objections to the PSR, and the district court adopted its factual statements as well as its guidelines calculations. The court then advised the parties that it was "greatly concerned" about the case. Doc. 27 at 3. Based on Brown's prior convictions and his conduct in this case, the court stated that it appeared that Brown did not "hesitate" to "us[e] a firearm and shoot[] at people." *Id.* at 5. The court stated that the case "scream[ed] out for" a statutory maximum sentence. *Id.* at 4–5.

The court then gave the parties the opportunity to present evidence. The government called one witness, Susan Curvin, the Tuscaloosa police officer who investigated the shooting at the

apartment complex. She described her investigation of the shooting. She explained that Brown did not end up facing any state charges arising out of the shooting because the owner of the Tahoe would not speak with police. During her testimony, the court admitted into evidence the surveillance video that showed Brown shooting at the Tahoe. Brown did not call any witnesses.

Brown urged the court to impose a sentence within the guidelines range. He asked the court to consider that he had grown up in a violent neighborhood. He acknowledged that the circumstances of his upbringing did not excuse his conduct but argued that they weighed against a statutory maximum sentence. Brown also pointed out that he had accepted responsibility for being a felon in possession of ammunition. Like Brown, the government asked the court to impose a sentence within the guidelines range.

Ultimately, the district court decided to vary upward from Brown's guidelines range and imposed the statutory-maximum sentence of 120 months. In imposing the sentence, the court relied on several of the applicable sentencing factors from 18 U.S.C. § 3553(a),[2] including Brown's history and characteristics, the

---

[2] Under § 3553(a), a district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2). The

nature and circumstances of the offense, the seriousness of the offense, the need to afford adequate deterrence, and the need to protect the public from future crimes.

The court explained that Brown's conduct involved shooting into the Tahoe and noted that he could have killed the driver of the vehicle or bystanders. It also recounted his criminal history. The court discussed how Brown previously had robbed multiple victims while carrying a firearm. The court noted that during this crime, Brown had "physically assaulted" and "probably sexually assault[ed]" two female victims. *Id.* at 27. The court also observed that Brown received a "light sentence" for the robbery because he was required to serve only three years in custody. *Id.* at 28.

The court also reviewed the incident when Brown pled guilty to assault in the second degree. It explained that in this incident Brown had shot in the victim's direction. The court again noted that Brown did not spend "very much time in custody" for this offense. *Id* at 29.

The court focused on the similarity between the most recent shooting and Brown's prior offenses because in all three incidents Brown used a firearm. And the court compared the most recent shooting to the assault case because on both occasions Brown shot

court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7).

a firearm in the direction of another person. Given that Brown's previous sentences had not deterred him, the court stated that a lengthy prison sentence was needed before Brown killed or seriously hurt someone. According to the court, Brown "deserve[d] significantly more time" than 120 months' imprisonment, but the court was bound by the statutory maximum. *Id.*

Brown asked the court to direct that his sentence would run concurrent to any sentence imposed in Alabama state court in connection with his probation revocation. The court refused to do so, saying Brown would not "get any credit for the other sentence against this sentence." *Id.* at 32.

This is Brown's appeal.

## II.

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007).

## III.

On appeal, Brown challenges his 120-month sentence, which involved an upward variance, as substantively unreasonable. But we cannot say that the district court abused its discretion in imposing this sentence.

When reviewing for substantive reasonableness, we ordinarily will vacate a sentence "only if[] we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a

sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (internal quotation marks omitted). "The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016).

In addition, a "district court has considerable discretion in deciding whether the § 3553(a) factors justify a variance and the extent of the variance." *Id.* When the sentence imposed involves an upward variance, we "may not apply a presumption of unreasonableness" and "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. In addition, the "fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.*

After considering the record, we are not left with a definite and firm conviction that the district court committed an error of judgment when it decided to vary upward and impose a 120-month sentence. At the sentencing hearing, the district court carefully considered the applicable § 3553(a) factors. It discussed in detail Brown's history and characteristics, including his earlier criminal convictions, as well as the nature and circumstance of his current offense when he shot at the Tahoe. The district court also concluded that an upward variance was needed to reflect the seriousness of the offense, to afford adequate deterrence, and to protect the public. As the court observed, Brown had previously

committed other crimes involving firearms and received relatively light sentences. Because those punishments had not deterred Brown, the district court concluded that a longer sentence was necessary. On this record, the district court's 120-month sentence was not unreasonable. *See United States v. Shaw*, 560 F.3d 1230, 1241 (11th Cir. 2009) (affirming an 83-month upward variance in felon-in-possession case when the defendant had previously committed other firearms-related offenses and received shorter sentences that had not deterred him from engaging in future criminal conduct).

Brown nevertheless argues that his sentence was unreasonable because the district court's decision to impose an upward variance was based on "two main factors—the nature of the instant offense and [his] criminal history," which were "already accounted for in [his] guidelines range." Appellant's Br. at 12–13. But the district court was permitted to look to the nature and circumstances of the offense along with Brown's criminal history when imposing an upward variance, even if it relied on similar considerations in calculating his guidelines range. *See United States v. Amedeo*, 487 F.3d 823, 834 (11th Cir. 2007) (affirming sentence that involved an upward variance because it was "reasonable for the district court to rely on certain aspects of [the defendant's] conduct . . . that it had already considered in imposing an enhancement").

In addition, Brown argues that the district court should have given greater weight to mitigating factors, including his difficult upbringing and his acceptance of responsibility. But a district court retains discretion to determine how much weight to assign to any

22-12570              Opinion of the Court                 11

particular § 3553(a) factor. *See Croteau*, 819 F.3d at 1309. Because the district court did not abuse its discretion, we affirm.

**AFFIRMED.**